```
                    UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                           Norfolk Division
```

**RUSSELL A. DREWREY,**

    **Plaintiff,**

**v.**                                                   **CIVIL ACTION NO. 2:17cv20**

**PORTSMOUTH CITY SCHOOL BOARD,**

    **Defendant.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Russell A. Drewrey ("Drewrey"), a former teacher in Portsmouth, Virginia, brings this amended action against Defendant Portsmouth City School Board ("the Board"), alleging unlawful employment practices under Title 29 of the Age Discrimination in Employment Act of 1967 ("ADEA"). (ECF no. 24.) The Board moved to dismiss the Amended Complaint and the matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. For the reasons set forth below, the undersigned recommends the court deny the Motion to Dismiss.

### FACTUAL AND PROCEDURAL HISTORY

As set forth in the Amended Complaint and presumed true for the purposes of this Motion, Drewrey, who is 61 years old, was a teacher at New Directions Center ("NDC"), an alternative school in Portsmouth, Virginia. (ECF no. 24 at 1-3.) Portsmouth

Public School Management ("PPSM") assigned Drewrey as Assistant Principal/Administrator of NDC on September 18, 2015. (*Id.*) The same day, Drewrey assumed the additional duties of Acting Principal and Administrator. (*Id.* at 2.)

In his new capacity, Drewrey regularly received directions from PPSM, instructing him to execute duties reserved for Principals and Administrators. (*Id.*) Moreover, PPSM held Drewrey out as an Assistant Principal/Administrator, and Drewrey used the title of Assistant Administrator in correspondence with Portsmouth Public School leadership and at NDC. (*Id.*) NDC teachers sought Drewrey out to carry out a Principal's and Administrator's daily duties. (*Id.*)

Along with twenty years of teaching experience, Drewrey has a Bachelor's of Science degree. (*Id.*) He also has a Master's Degree in Educational Leadership, which he received in 2009 from a joint program between Regent University and Portsmouth Public Schools after his Principal recommended him and the program selected him to attend. (*Id.*) Yet, in October 2016, when he requested compensation for his work as an Assistant Principal, PPSM instructed him to discontinue using the title of Acting Administrator. (*Id.*) And in each of the sixteen instances since receiving his Master's Degree in which Drewrey applied for a leadership position, the Board has hired a younger, less-

experienced teacher, including some who did not meet the qualifications listed in the job posting. (*Id.* at 3)

The Board never offered Drewrey an explanation as to why he was not selected, or what he could do to improve his performance. (*Id.*) Even in the instances where the Board interviewed Drewrey for a position, he never received an explanation as to why the Board ultimately did not select him. (*Id.*) In the past year, Drewrey has applied for eight positions, but received no interview. (*Id.*)

The Board's selection of younger teachers other than Drewrey led him to file a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 15, 2016, alleging specific acts of discrimination. (*Id.* at 1, 3.) The EEOC responded to Drewrey on October 19, 2016, informing him he had the right to institute civil action within ninety days. (*Id.*) The EEOC complaint culminated in Drewrey filing his original Complaint on January 18, 2017, alleging the Board did not select him for leadership because of his age. (ECF no. 1.)

More specifically, Drewrey alleges that although he has worked for Portsmouth City Schools for 20 years, with a good record and appropriate qualifications, due to the Board's discriminatory promotion system which disfavors older workers, he was ignored for leadership positions and denied appropriate compensation for the time he acted as Assistant Principal. (ECF

3

no. 24 at 3.) Drewrey also alleges that the Board, in stripping him of his title, denying him appropriate compensation, and ignoring him for promotion, has intentionally, willfully, and maliciously violated the ADEA, causing Drewrey economic loss and emotional harm. (*Id.* at 4.)

The Board moved to dismiss Drewrey's claim for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing only that it is insulated from suit by sovereign immunity and the Eleventh Amendment. (ECF no. 26.) Drewrey opposed the Board's Motion to Dismiss, stating Board's immunity is abrogated under Virginia Code § 15.2-1405. (ECF no. 28.) The Board replied that Code § 15.2-1405 *grants* immunity and that the court may still dismiss the complaint. (ECF no. 29.) Although Drewrey's reasons for opposing the motion to dismiss are unpersuasive, the Board is not immune from his suit alleging violations of federal law. As a result, this report recommends that the court deny the Board's motion.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal adequacy of a complaint so as to ascertain whether a plaintiff has properly stated a claim. *Goard v. Crown Auto, Inc.*, 170 F.Supp.3d 915 (W.D. Va. 2016). A complaint is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its

4

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations must raise a right to relief beyond speculation and mere conceivability; "threadbare recitals of the elements of a cause of action" do not state a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. At the motion to dismiss stage, the Court must accept the factual allegations as true, but legal conclusions couched as factual allegations are insufficient, and must themselves be supported by alleged facts. *Iqbal*, 556 U.S. at 678-79, 696; *Twombly*, 550 U.S. at 555. If the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then a claim has facial plausibility. *Iqbal*, 556 U.S. at 678.

Courts may also dismiss claims under Rule 12(b)(1), which tests courts' subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving federal jurisdiction is proper. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A party may attack subject matter jurisdiction in two ways. First, a 12(b)(1) motion may simply attack a pleading on its face, arguing it fails to allege facts on which subject matter jurisdiction can be based. *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Intern. Terminals, Inc.*, 914 F.Supp. 1335, 1338 (E.D.

5

Va. 1996). In that case, the facts of the pleading are assumed to be true and the plaintiff is afforded the same procedural protection a 12(b)(6) motion affords. *Id.* In the alternative, a 12(b)(1) motion may attack the existence of subject matter jurisdiction apart from the pleadings entirely, essentially challenging the court's "very power to hear the case" at all. *Id.* (citations omitted). For such a motion, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

## DISCUSSION

**A. Drewrey's Amended Complaint Satisfies Rule 12(b)(6).**

Drewrey's complaint satisfies Rule 12(b)(6) because it alleges sufficient facts to state a claim of age discrimination. A *prima facie* failure-to-promote case under the ADEA requires Drewrey to prove: (1) he is a member of a protected class (2) he applied for an open position for which he was qualified; (3) he was rejected, despite his qualifications; and (4) the position remained open or similarly qualified, substantially younger worker was hired. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

Drewrey has stated a sufficient claim for age discrimination. First, his complaint sets forth that he is 61;

he is, therefore, protected by the ADEA. 29 U.S.C. § 631(a). Moreover, Drewrey's complaint alleges specific facts that, notwithstanding his many applications for open positions, he was routinely passed over for promotion and denied the position of Assistant Principal, despite the fact that he was qualified. Finally, he alleges that younger workers were hired instead of him, despite their weaker credentials. Drewrey has thus pled sufficient plausible facts to make out a claim under the ADEA, and the undersigned accordingly recommends that the court deny the Board's motion to dismiss as to Rule 12(b)(6). *See e.g., Poore v. Peterbilt of Bristol, L.L.C.*, 852 F.Supp.2d 727, 730 (W.D. Va. 2012).

### B. Neither The Eleventh Amendment Nor Sovereign Immunity Shields the Board From Suit Under The ADEA.

With Rule 12(b)(6) satisfied, the Board primarily relies on is its concurrent Rule 12(b)(1) motion to dismiss, in which the Board attacks the court's power to hear this case, arguing it is insulated from suit under sovereign immunity and the Eleventh Amendment. (ECF no. 27.) As an initial matter, it is not settled law whether a defendant properly asserts Eleventh Amendment and sovereign immunity through a motion to dismiss under Rule 12(b)(1) or 12(b)(6). *See Lloyd v. Morgan*, No. 4:14CV107, 2015 WL 1288346 n. 3 (E.D. Va. March 20, 2015). Fourth Circuit courts have not been uniform on which rule should

7

apply. *Compare Noel-Batiste v. Va. State Univ.*, No. 2:12cv826, 2013 WL 499342, at * 1-3 (E.D. Va. Feb. 7, 2013) (analyzing dismissal for Eleventh Amendment immunity bar under Rule 12(b)(6)), *with Haley v. Va. Dep't of Health*, No. 4:12cv16, 2012 WL 5494306, at * 1-2 (W.D. Va. Nov. 13, 2012) (deciding the immunity issue under Rule 12(b)(1)).

Nevertheless, the Eleventh Amendment, although it is not a true "limit" on federal courts' subject matter jurisdiction, expressly inhibits exercise of that jurisdiction. *Roach v. West Virginia Regional Jail and Correctional Facility*, 74 F.3d 46, 48 (4th Cir. 1996). And, persuasively, there is a trend within the Fourth Circuit to consider Eleventh Amendment and sovereign immunity issues under Rule 12(b)(1). *Trantham v. Henry County Sheriff's Office*, No. 4:10CV00058, 2011 WL 863498 at *3 (W.D. Va. March 10, 2011); *see also Earl v. Norfolk State University*, No. 2:13CV148, 2014 WL 2916718 at *21 (E.D. Va. June 26, 2014). Indeed, federal courts in Virginia have found it appropriate to apply Rule 12(b)(1) to sovereign immunity cases, precisely because courts lack subject matter jurisdiction where sovereign immunity has not been waived. *See, e.g., Woodson v. United States*, No. 3:15CV002-HEH, 2015 WL 430226 at *2-3 (E.D. Va. Feb. 2, 2015); *see also, e.g., Blankenship v. Lynch*, No. 3:14CV6420, 2015 WL 5561221 at *4 (E.D. Va. Sept. 17, 2015). Thus, because the Eleventh Amendment and sovereign immunity effectively block

the exercise of jurisdiction, it is appropriate to analyze the Board's motion to dismiss under 12(b)(1). *See Woodson*, 2015 WL 430226 at *2-3.

### a. *The Board Is Not Entitled to Eleventh Amendment Immunity Because It Is Not An Arm Of The State.*

The Eleventh Amendment immunizes nonconsenting states against suit for damages in federal court. *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013). By extension, that immunity encompasses state agents and instrumentalities. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). In other words, immunity under the Eleventh Amendment extends to state officials, as well as "arm[s] of the [s]tate." *Mt. Healthy Cty. Schl. Dist. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). In *Mt. Healthy*, however, the Supreme Court reasoned that a local Ohio school board was "more like a county or city than it is like an arm of the State." *Id*. In doing so, the Court held that Eleventh Amendment immunity does not apply to "counties and similar municipal corporations." *Id*. The question for this court, then, is whether the Board is an arm of the state of Virginia or a municipal corporation, unshielded by the Eleventh Amendment's purview. *See Purdham v. Fairfax Cty. Scl. Bd.*, No. 5:15-cv-00045, 2016 WL 929279 (W.D. Va. Feb. 1, 2016) (deciding, for Eleventh Amendment purposes, whether Fairfax County School

9

Board was an arm of the state immune from suit under the Fair Labor Standards Act ("FLSA")).

The importance of this question is emphasized by the Supreme Court's holding that the ADEA does not abrogate states' Eleventh Amendment immunity from suit by private persons. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). If the Board is an arm of the State, then it is protected by the Eleventh Amendment. *Mt. Healthy* 429 U.S. at 280. If it is not, then the Board may well be uninsulated from suit under the ADEA. *See, e.g., Purdham*, 2016 WL 929279 at * 2; *see also, e.g., Harris v. Powhatan Cty. Sch. Bd.*, 543 Fed.Appx. 343 (4th Cir. 2013) (ADEA claim against a school board could proceed because triable facts existed such that a reasonable jury could find the school board terminated an employee because of his age). Because the answer to this question turns on the scope of the Eleventh Amendment, it is controlled by federal law—though, state law defines the character of the Board seeking immunity. *Cash v. Granville Cty. Sch. Bd.*, 242 F.3d 219, 222 (4th Cir. 2001).

Persuasively, for multiple types of federal actions, such as suits under 42 U.S.C. § 1983 and the FLSA, federal courts have found that Virginia school boards are not arms of the State. *Cole v. Buchanan Cty. Sch. Bd.*, 661 F.Supp.2d 569 (W.D. Va. 2009); *Purdham*, 2016 WL 929279. In doing so, courts have followed the Fourth Circuit's analysis in *Cash* which laid out

10

factors relevant to consideration of whether state entities are entitled to Eleventh Amendment immunity. *Cash*, 242 F.3d 219. The Fourth Circuit ultimately held that a North Carolina county school board was more akin to a locality than an arm of the state, placing weight primarily on whether a judgment against the governmental entity would be paid from the state's treasury.[1] The Court, however, laid out three additional factors for examining the relationship between the state and the local entity: (1) the extent of the State's control over the entity; (2) the scope of the entity's purview—whether local or statewide; and "(3) the manner in which State law treats the entity." *Cash*, 242 F.3d at 224.

An examination of Virginia law indicates local school boards are more similar to municipal corporations than arms of the State itself. As to the treasury factor, a judgment against the Board would not diminish Virginia's treasury. Inasmuch as school boards receive state funds, so too do they receive federal funds, as well as *local* funds from local governments and

---

[1] In fact, the Fourth Circuit said that the state treasury consideration is the "most salient" factor for Eleventh Amendment considerations. *Cash*, 242 F.3d at 224 (citations omitted). Federal courts in Virginia, however, have pointed out this may not be true under the Supreme Court's decision in *Federal Maritime Commission v. South Carolina Ports Authority*, 535 U.S. 743 (2002). *Federal Maritime* implied that sovereign immunity's primary function is not to protect state treasuries. *Federal Maritime*, 535 U.S. at 765. Regardless, federal courts have applied the treasury consideration as an important, though not dispositive, factor. *See Pele v. Pa. Higher Educ. Assistance Agency*, 13 F.Supp.3d 518, 524; *see also Purdham*, 2016 WL 929279 at *2-3. The Fourth Circuit itself has stated the treasury factor likely no longer deserves "dispositive preeminence." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131 n. 4 (4th Cir. 2014).

11

local levies, which municipalities are permitted to exact for the benefit of the boards. Va. Code § 22.1-88. More to the point, however, by statute, payment of any judgment against a school board comes from funds appropriated to them, not directly from the State. Va. Code § 22.1-82, 83. Any argument which contends that, because state funds may be lumped into a pool from which a school board pays a particular judgement, it is the State which pays the judgment is not credible. *Cole*, 661 F.Supp.2d at 571 n. 3. At best, that argument forwards a technicality which is too attenuated and indirect to be considered payment from the State's treasury. *Id*.

Virginia also exercises little direct control over local school boards. *Cole*, 661 F.Supp.2d at 571. Indeed, Virginia recognizes school boards as corporate bodies, vested with the power to assign duties to their own members, contract, sue and be sued, and hold title to real property. Va. Code § 22.1-71. School boards may independently hire attorneys to represent themselves and their employees, and may pay employees' legal expenses. Va. Code § 22.1-82, 83. School boards, not the State, manage the funds for local school systems. Va. Code § 22.1-89. And local school boards may also purchase liability insurance, contract for telephone services and credit cards in their own name, and set policies for commercial and corporate partnerships. Va. Code § 22.1-84, 89.3, 89.4. In short,

Virginia's statutory scheme empowers local school boards with extensive autonomy, financial and otherwise. *See*, *Purdham*, 2016 WL 929279 at *3.

Under *Cash's* second factor – "whether the school board is involved in statewide or local concerns" – it is readily apparent that Virginia local school boards' particular concerns are eminently local. *Cole*, 661 F.Supp.2d at 572. Although they must comply with state law, school boards' focus is independent of statewide concerns. *Id*. Local school boards, for example, are statutorily tasked with determining the length of the school year, "the studies to be pursued, the methods of teaching and the government to be employed in the schools . . . ." Va. Code § 22.1-79. It is local voters or local officials – not Virginia – who select school board members. Va. Code §§ 22.1-47, 57.3. Also, school boards set locality-level policies, such as polices on school uniforms and appointment of student representatives to the board. Va. Code §§ 8.01-79.2, 86.1.

Finally, under the third *Cash* factor – the way in which state law treats the entity – it is equally clear Virginia law characterizes school boards as local entities, not arms of the state. *Cole*, 661 F.Supp.2d at 572. True, Virginia has some degree of influence over local school boards. *Id*. School boards receive money from the State and they must follow state rules on certain aspects of curriculum and budgets. Va. Code §§

13

22.1-88, 115, 199-212. Nonetheless, the section of the Virginia Code discussing state agencies and civil remedies specifically says local school boards are "not state agencies" and that board employees are not "state employees." Va. Code § 8.01-195.3. On this point, the Board's cite to the Supreme Court of Virginia's decision in *Kellam v. School Board of the City of Norfolk*, 202 Va. 252 (Va. 1960) is to no avail. *Cole*, 661 F.Supp.2d at 572. *Kellam* held that local school boards are state agents entitled to sovereign immunity, but the case narrowly dealt with *state* tort claims, and is thus inapplicable to actions under federal law. *Id.*; *Purdham*, 2016 WL 929279 at *3.

Upon consideration of the *Cash* factors and the fact that a judgment against the Board would not diminish the State's treasury, it is clear the Board is an autonomous municipal entity, not an arm of the state of Virginia. *See Cole*, 661 F.Supp.2d at 572; *but see Adams v. Calvert Cty. Pub. Sch.*, 201 F.Supp.2d 516 (D. Md. 2002) (holding a Maryland county school board was immune from suit under the ADEA because it was an arm of the state). The undersigned therefore recommends the court find that the Board is not entitled to Eleventh Amendment immunity against Drewrey's ADEA claims.

14

> b. *The Board Is Not Entitled To Sovereign Immunity Because Drewrey Brings His ADEA Claim Under Federal, Not Virginia Law.*

Inadvertently or not, the Board has conflated Eleventh Amendment immunity with states' general sovereign immunity. In fairness, the Board does specifically theorize they are entitled to sovereign immunity *and* Eleventh Amendment immunity. (ECF no. 27 at 5.) Its essential argument, nonetheless, is that the court should dismiss Drewrey's claim because the ADEA does not abrogate states' immunity under the Eleventh Amendment and because the Supreme Court of Virginia, in *Kellam*, held school boards are state agencies deserving of sovereign immunity. (ECF no. 27.) But this argument fails to appreciate the nuanced differences between Eleventh Amendment immunity and state sovereign immunity. The two are closely related, and consequently similar, but they are not identical. *See Stewart v. North Carolina*, 393 F.3d 484, 487-88 (4th Cir. 2005). And the breadth of Eleventh Amendment immunity is defined by federal law. *Cash*, 242 F.3d 219, 222.

The Eleventh Amendment provides that the judicial power of the United States does not extend to suits against states in federal court, whether by a state's own citizens or citizens of another state. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). In essence, its purpose is to afford

15

States the respect owed to them as members of the Union, and prevents them from being subjected to judicial power at private parties' behest. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39-40 (1994); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 483 (4th Cir. 2005). States, however, also enjoy a more extensive sovereign immunity which bars *all* private suits against a state, whether in federal court or state courts. *McCants Collegiate Athletic Assoc.*, No. 1:15-cv-176, 2017 WL 1507185 at *2 (M.D. N.C. 2017). Neither type of immunity is absolute; states may waive either, whether in federal or state court. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015).

The Board neglects this distinction almost entirely. As noted above, the Board correctly states that the Supreme Court of Virginia, in *Kellam*, held that local school boards are arms of the state, consequently covered by Virginia's sovereign immunity. (ECF no. 27 (citing *Kellam,* 202 Va. 252). Thus, argues the Board, because the United States Supreme Court has found that the ADEA does not abrogate states' Eleventh Amendment immunity, it is immune from Drewrey's suit. (ECF no. 27.) The Board also cites several federal court opinions which have examined *Kellam* and concluded that, "[g]enerally, school boards

16

have sovereign immunity in Virginia." (*Id.* (citing *Roach v. Botetourt Cty. Sch. Bd.*, 757 F.Supp.2d 591 594 (W.D. Va. 2010)).[2]

The Board's argument, however, fundamentally misapplies not only the holding in *Kellam*, but also federal courts' adherence to it. *Kellam* itself is a narrow holding, reasoning that local school boards in Virginia are sovereignly immune for the purposes of *state tort* claims, not that they were immune from any suit whatsoever. *See Kellam*, 202 Va. 252, 254-58; *see also Cole*, 661 F.Supp.2d at 572 ("[*Kellam*] held that local school boards are entitled to sovereign immunity, but that immunity . . . only pertains to tort claims.); *see also Purdham*, 2016 WL 929279 at *3 ("*Kellam* was a limited holding and applied only to tort claims and therefore would not apply in this case where the claim is the under the FLSA."). Indeed, federal courts which have found school boards to be sovereignly immune under *Kellam* have done so in the context of *state* law claims. *See, e.g., B.M.H. v. The School Bd. of the City of Chesapeake*, 833 F.Supp. 560, 573 (E.D.Va.1993) (school board immune from suit under Virginia negligence claims).

---

[2] The Board also cites *Boykin v. Commonwealth Dep't of Juv. Justice*, 2015 U.S. Dist. LEXIS 110642, *11 (E.D. Va. 2015) for the proposition that Virginia state agencies are immune from suit, even under the ADEA. *Boykin* is inapposite; the court there found the Department of Juvenile Justice was an agency of the Commonwealth and thus was entitled to Eleventh Amendment protection against suit under the ADEA. *Id.* The Board in this case is not a state agency, and so not entitled to Eleventh Amendment protection.

17

Because *Kellam* grants sovereign immunity to school boards only under Virginia state law, it is no defense to Drewrey's ADEA claim.³ Drewrey's is a federal claim, not a state tort claim. And under federal law, the Board is not a state agency or arm of the state entitled to Eleventh Amendment protection. Accordingly, the undersigned recommends that the court find that is has subject matter jurisdiction and deny the Board's Rule 12(b)(1) motion to dismiss.

**C. Drewrey Misapplies Virginia Code § 15.2-1405.**

Because this report recommends that the court find the Board is not entitled to Eleventh Amendment immunity, the court need not address at length Drewrey's argument in his opposition brief that Virginia Code § 15.2-1405 abrogates the Board's immunity. (ECF no. 28.) But it should be noted that Drewrey misapplies the statute. Quite the opposite of abrogating immunity, the statute *grants* sovereign immunity to individual members of local governing bodies, except when their behavior constitutes willful misconduct or gross negligence. Va. Code § 15.2-1405. Although Drewrey argues this exception applies because the Board's conduct equaled willful misconduct, he is incorrect. Even if there was willful misconduct on the Board's part, the statute withholds the grant of immunity for specific

---

³ Assuming a plaintiff meets all the statutory requirements to bring an ADEA claim, federal courts have subject matter jurisdiction to hear the claim. *See, e.g., Jones v. Calvert Group, LTD.*, 551 F.3d 297, 300 (4th Cir. 2009).

*members* of local governing bodies; it does not waive immunity for the Board as a municipal entity. *Id*.

## RECOMMENDATIONS

In light of the foregoing, the undersigned recommends that the court DENY the Board's motion to dismiss, under both Rule 12(b)(1) and 12(b)(6).

## REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas*

19

v. *Am*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to mail a copy of this Report and Recommendation to all counsel of record.

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

July 10, 2017