UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RUSSELL A. DREWREY,

        Plaintiff,

v.                                        ACTION NO. 2:17cv20

PORTSMOUTH CITY SCHOOL BOARD,

        Defendant.

## MEMORANDUM ORDER

This matter comes before the court on the Motion to Dismiss ("Motion") and Memorandum in Support filed by Defendant Portsmouth City School Board ("Board") on June 1, 2017. ECF Nos. 26, 27. Plaintiff Russell A. Drewrey filed a Memorandum of Law in Opposition to the Board's Motion on June 13, 2017, ECF No. 28, and the Board filed a Reply on June 19, 2017. ECF No. 29.

On June 20, 2017, this court referred the Motion to United States Magistrate Judge Douglas E. Miller, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motion. ECF No. 30.

The Magistrate Judge filed the Report and Recommendation ("R&R") on July 10, 2017. ECF No. 35. The Magistrate Judge recommended denying the Motion. R&R at 1. By copy of the R&R, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. See id. at 19-20. On July 21, 2017, the Plaintiff filed Objections. ECF No. 38. On August 15, 2017, the Board responded to the Plaintiff's Objections. ECF No. 40. The matter has been fully briefed and is ripe for review. For the reasons set forth below, the court **DENIES** the Motion to Dismiss.

I.

This action arises from a claim of employment discrimination by the Plaintiff, Russell A. Drewrey ("Drewrey"), a sixty-one year-old teacher at New Direction Center ("NDC"), an alternative school in Portsmouth, Virginia. Am. Compl. ¶¶ 8, 17, 28, ECF No. 24. Drewrey alleges that the Board used a discriminatory promotion system that disfavored older workers, causing him to be denied both advancement to numerous positions for which he applied and appropriate compensation for his position as Assistant Principal. Id. ¶¶ 21, 23-24. Thus, Drewrey alleges that the Board, in ignoring him for promotion, intentionally, willfully, and maliciously violated the Age Discrimination in Employment Act of 1967 ("ADEA"), and

unlawfully retaliated against him under the ADEA, causing Drewrey economic loss and emotional harm. Id. ¶¶ 27-32.

Drewrey filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") on August 15, 2016, alleging specific acts of discrimination. Id. ¶ 5. The EEOC responded to Drewrey on October 19, 2016, informing him that he had the right to institute a civil action within ninety days. Id. ¶ 26. Drewrey then filed a Complaint in this court on January 18, 2017. ECF No. 1. Drewrey filed an Amended Complaint on May 10, 2017. ECF No. 24.

The Board's Motion, filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), seeks dismissal of the claims against the Board, arguing only that the Board is insulated from suit by sovereign immunity or the Eleventh Amendment. Mot. to Dismiss. In the R&R, the Magistrate Judge found that neither sovereign immunity nor the Eleventh Amendment applies to the Board, and recommended that this court deny the Board's Motion. R&R at 6-19. The Board objected to the Magistrate Judge's conclusion that the claims in this case are not barred by sovereign immunity or the Eleventh Amendment. Def.'s Obj. at 1.

II.

Pursuant to Federal Rule of Civil Procedure 72(b), the court, having reviewed the record in its entirety, shall make a de novo determination of those portions of the R&R to which a

3

party has specifically objected.[1] The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a Complaint should be dismissed for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). The Plaintiff carries the burden of proving subject matter jurisdiction. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). To meet this burden, the Plaintiff must prove subject matter jurisdiction exists by a preponderance of the evidence. Id. Where the Defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the court should take the facts alleged in the Complaint as true, and must deny the

---

[1] There were no objections to the Magistrate Judge's recommendation to deny the Motion, as to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Therefore, this court accepts the Magistrate Judge's recommendation to deny the Board's Motion, as to dismissal under Rule 12(b)(6). The Board did, however, object to the Magistrate Judge's recommendation to deny the Motion, as to dismissal under Rule 12(b)(1), and the court herein reviews de novo that objection.

Motion to Dismiss, if the Complaint alleges sufficient facts to invoke subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

Although the Eleventh Amendment is not a "true limit" on federal courts' subject matter jurisdiction, it does inhibit the exercise of that jurisdiction. Roach v. W. Va. Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996). Therefore, if the Eleventh Amendment or sovereign immunity applies, this court should grant the Motion to Dismiss for lack of subject matter jurisdiction.

The Eleventh Amendment immunizes nonconsenting states against suits for damages in federal court. Will v. Mich. Dept. of State Police, 491 U.S. 58, 67 (1989). Eleventh Amendment immunity extends to state officials and "arm[s] of the State," but not to municipal corporations or similar political subdivisions. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). The ADEA does not abrogate a state's Eleventh Amendment immunity from suit by private persons. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 92 (2000). Accordingly, the issue here is whether the Board "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Mt. Healthy, 429 U.S. at 280.

To make that determination, this court must look at the "nature of the entity created by state law." Id.

In Cash v. Granville County School Board of Education, the Fourth Circuit lays out the factors courts should consider to determine whether state entities are entitled to Eleventh Amendment immunity. 242 F.3d 219, 221, 223-24 (4th Cir. 2001) (holding that a North Carolina county school board was more akin to a municipality than an arm of the State). The primary factor to consider is the State treasury, looking at whether a judgment against the governmental entity would be paid from the State's treasury. Id. at 223. Courts should also consider three additional factors: (1) the extent of the State's control over the entity; "(2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity." Id. at 224.

### III.

The Board objects to the Magistrate Judge's finding that Virginia school boards should be treated as municipal corporations, not as arms of the State, and therefore are not immunized by the Eleventh Amendment.[2] This court will examine

---

[2] The Board agrees that the controlling authority is Cash, but disagrees as to the Magistrate Judge's analysis under such factors.

6

each of the Cash factors to determine whether the Board is entitled to sovereign immunity.

### A. State Treasury Factor

First, applying the State treasury factor, the Magistrate Judge found that, by statute, judgments against Virginia school boards are not paid from the Commonwealth's treasury. R&R at 11-12 (citing Va. Code § 22.1-82 (requiring payment of any judgment against a school board to come from funds appropriated to it, not from the State)). Thus, the most "salient" factor, the State treasury factor, "weighs against finding [the school board] immune." Cash, 242 F.3d at 224.

The Board does not dispute that the Commonwealth does not pay for judgments against Virginia school boards, but argues that the State treasury factor is not dispositive when determining whether an entity falls within the purview of the Eleventh Amendment. See Def.'s Obj. at 8. Although the State treasury factor "does not deserve dispositive preeminence," it still "remains of considerable importance." U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 137 n.4 (4th Cir. 2014) (citation omitted). A governmental entity may still enjoy sovereign immunity, if "the relationship between the governmental entity and the State [is] sufficiently close to make the entity an arm of the State." Cash, 242 F.3d at 224. Thus, it is necessary to evaluate the Commonwealth of Virginia's

7

relationship with its local school boards under the three additional Cash factors to determine whether they should be considered an arm of the State.

### B. Degree of Control

The first additional factor is the State's degree of control over local school boards. Id. The Board objects to the Magistrate Judge's finding that Virginia exercises little direct control over school boards. Def.'s Obj. at 2-6. The Magistrate Judge referred to Cole v. Buchanan County School Board, where the district court found that examining Virginia law leads to the result that "county school boards operate as independent units of local government." 661 F. Supp. 2d 569, 571 (W.D. Va. 2009). For example, the court in Cole found that Virginia school boards were corporate bodies, vested with the power to assign duties to its own members, contract, sue and be sued, and hold title to real property. Id. (citing Va. Code § 22.1-71). Additionally, school boards may independently hire attorneys to represent themselves and their employees, and may pay employees' legal expenses. Id. (citing Va. Code §§ 22.1-82, 22.1-83). School boards, not the State, manage the funds for local school systems. Id. (citing Va. Code § 22.1-89). Lastly, local school boards may also purchase liability insurance, contract for telephone services and credit cards in their own name, and set

policies for commercial and corporate partnerships. Id. (citing Va. Code §§ 22.1-84, 22.1-89.3, 22.1-89.4).

In contrast, the Board argues the Commonwealth of Virginia exercises a great deal of control over local school boards. Def.'s Obj. at 2-6. The Board compares Virginia's education system to Maryland's, as opposed to the North Carolina system addressed in Cash. Id. at 3; see Lee-Thomas v. Prince George's Cty. Pub. Sch., 666 F.3d 244, 248 n.5 (4th Cir. 2012) (noting that the Plaintiff conceded the Defendant school board to be an agent of the State, citing Lewis v. Bd. of Educ. of Talbot Cty., 262 F. Supp. 2d 608, 612-13 (D. Md. 2003)). In Lewis, the court found that the State of Maryland more closely regulated its school boards than did North Carolina, which gave them more general control. 262 F. Supp. 2d at 613 (distinguishing its holding from Cash). Therefore, the district court in Lewis held that Maryland school boards were an arm of the State for sovereign immunity purposes. Id. at 614. Here, the Board cites various Virginia statutes that it believes show that the Commonwealth more closely regulates its school boards than does the State of North Carolina.³ See Def.'s Obj. at 3-6.

---

³ This includes, inter alia, that Virginia's Board of Education has the vested power to generally supervise the public school system, the control over the accreditation of public schools, and the authority to set guidelines for defining criteria to evaluate the performance of principals and assistant principals. Va. Code §§ 22.1-8, 22.1-19, 22.1-294(B).

Although the Commonwealth of Virginia has some control over its local school boards, for the most part school boards "retain[] sole final decisionmaking authority . . . ." Flickinger v. Sch. Bd. of Norfolk, 799 F. Supp. 586, 593 (E.D. Va. 1992). This control is in contrast with that of Maryland, where local boards are under much stronger state financial control.[4] Overall, local school boards in Virginia "have a wide breadth of financial autonomy and independent responsibilities." Cole, 661 F. Supp. 2d at 572. Additionally, school board members must be appointed by the Governor of Maryland, rather than being locally elected or appointed as in Virginia. See Lewis, 262 F. Supp. 2d at 613 (citing Md. Code Educ. § 3-108); Va. Code §§ 22.1-35, 22.1-47, 22.1-57.3 (setting forth methods localities use to select school board members, i.e., school board selection commissions comprised of local residents, appointment by board of county supervisors, or by popular vote).

The court agrees with the Magistrate Judge's finding that Virginia exercises little control over its school boards. This finding is in accordance with the reasoning and the decisions in Cash (North Carolina), Cole (Virginia), and Lewis (Maryland).

---

[4] For example, Maryland requires its local school boards to "submit an annual audit conducted by the state," and to receive approval from the State Superintendent before buying, selling, or holding property. Lewis, 262 F. Supp. 2d at 613 (citing Md. Code Educ. §§ 5-113, 4-115).

10

### C. Local vs. Statewide Concerns

The second additional Cash factor analyzes whether the "School Board is involved with local or statewide concerns." 242 F.3d at 226. The Board objects to the Magistrate Judge's finding that "Virginia local school boards' particular concerns are eminently local." R&R at 13 (citing Cole, 661 F. Supp. 2d at 572). The Board generally argues that Virginia "has exercised a great concern that education throughout the Commonwealth be uniform," mentioning, inter alia, the Commonwealth's recent adoption of state-wide Standards of Learning ("SOL") and its involvement in determining teacher qualifications. Def.'s Obj. at 6-7.[5]

Although the Commonwealth does not permit local boards of education to be "inconsistent" with its laws, the Magistrate Judge correctly found that the Commonwealth statutorily tasks the local school board with setting locality-level policies, such as determining the length of the school year, the curriculum, "the methods of teaching[,] and the government to be employed in the schools." R&R at 13 (citing Va. Code § 22.1-79). Additionally, as previously addressed,[6] local voters or local

---

[5] The court notes that while Virginia's Board of Education establishes the SOLs, the local school boards implement them. Va. Code § 22.1-253.13:1.

[6] See supra Part III.B.

11

officials, not the Commonwealth, select school board members. Id. (citing Va. Code §§ 22.1-47, 22.1-57.3). Overall, the Commonwealth sets the standards and then delegates authority to local school boards to choose how to enforce them. See Va. Code § 22.1-79.[7] Accordingly, the court agrees with the Magistrate Judge's finding that, in Virginia, the concerns of the school boards are primarily local, with the state exercising limited involvement in some general standards for state-wide education. See R&R at 13-14.

### D. State Law's Treatment of the Entity

The last Cash factor looks at how state law treats the entity. 242 F.3d at 224. The Board objects to the Magistrate Judge's finding that Virginia law characterizes local school boards as akin to municipal corporations, not arms of the State. Def.'s Obj. at 7-8. The Board argues that the Supreme Court of Virginia found that a school board is considered an arm of the State in Kellam v. School Board of the City of Norfolk, 117 S.E.2d 96 (Va. 1960). Id. at 7. In Kellam, the Virginia Supreme Court held that a local school board fell under the purview of sovereign immunity when sued in a tort claim. 117 S.E.2d at 97, 100. However, the Magistrate Judge found that Kellam did not apply, as the holding only speaks to local school boards with respect to state tort liability. R&R at 14. Therefore, the

---

[7] E.g., supra note 5.

Magistrate Judge found the holding to be inapplicable to actions under federal law, such as the claim at hand. Id.; see Cole, 661 F. Supp. 2d at 572 (holding that Kellam was inapplicable to bar suits against a school board under a federal claim). The Board claims, on the other hand, that the Virginia Supreme Court would not have the occasion to address a school board's sovereign immunity with respect to a federal claim. Def.'s Obj. at 7. This objection reflects the "great confusion" surrounding the third additional Cash factor. See Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996) ("Some cases have mistakenly treated a state court decision as to whether an entity is a state actor as determinative."). Considering the overall analysis of "State control versus local autonomy," Cash, 242 F.3d at 226, the Magistrate Judge's finding that Virginia law characterizes its school boards as local governmental entities, not arms of the State, is correct. R&R at 13; see Ram Dita v. Md. Nat'l Capital Park & Planning Comm'n, 822 F.2d 456, 460 (4th Cir. 1987) (finding state agency not to be immunized under the Eleventh Amendment, despite state court's finding of immunity under state law).

### IV.

In conclusion, the Magistrate Judge found that the State treasury factor, coupled with the three additional factors in Cash, leads to the conclusion that in Virginia, local school

13

boards act as independent local governmental agencies, not as arms of the State for purposes of sovereign immunity. After a <u>de novo</u> review of the Objections, the court agrees with the Magistrate Judge that the Board is not entitled to sovereign immunity or immunized by the Eleventh Amendment.

Accordingly, the Board's Objections to the Magistrate Judge's R&R are **OVERRULED**, and the Magistrate Judge's R&R is hereby **ADOPTED AND APPROVED IN FULL**. The Motion to Dismiss is **DENIED**, and the Plaintiff may proceed on the ADEA claims against the Board.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge
REBECCA BEACH SMITH
CHIEF JUDGE

September 6, 2017