# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

RUSSELL A. DREWREY,

      Plaintiff,

v.                                **CIVIL ACTION NO. 2:17cv20**

PORTSMOUTH CITY
SCHOOL BOARD,

      Defendant.

## OPINION AND FINAL ORDER

In this employment discrimination action brought by Russell A. Drewrey against his employer, the Portsmouth City School Board, the Board has moved for summary judgment (ECF No. 50). The Board argues the evidence is insufficient to permit a reasonable juror to conclude Drewrey was discriminated against by not promoting him because of his age or that he was retaliated against for complaining of discriminatory acts. See Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") (ECF No. 51). The Board's motion is supported by Drewrey's own deposition and numerous exhibits. Drewrey filed a 9-page brief opposing summary judgment, attaching three exhibits, including a "stipulation" of facts in lieu of sworn testimony. (ECF No. 58).

After reviewing the evidence the parties have submitted in contest of the summary judgment motion, the court concludes that there is no direct evidence of discrimination and Drewrey has produced no evidence creating a dispute of fact as to whether the city's nondiscriminatory reason for not promoting him was pretextual. His failure to promote claim therefore cannot survive summary judgment. Additionally, the court lacks subject matter jurisdiction over Drewrey's retaliation claim, and, even if there was jurisdiction, Drewrey has failed to identify evidence supporting the conclusion that he was retaliated against for engaging

in legally protected activity. Accordingly, as explained in greater detail below, the court will GRANT the City's Motion for Summary Judgment (ECF No. 50) and enter judgment in its favor on the failure to promote claim and DISMISS the retaliation claim for want of jurisdiction.

## I.    FACTUAL AND PROCEDURAL HISTORY

Russell Drewrey is 61 years old and thus, over the age of 40. He has been and remains employed as an educator with the Portsmouth City Public Schools Division. He has worked as a teacher, primarily in Portsmouth, since 1996.

The allegedly discriminatory acts giving rise to Drewrey's present claims happened between 2015 and 2016. Am. Compl. (ECF No. 24); Drewrey Spreadsheet (ECF No. 51-3).[1] The court summarizes those events below and the relevant events preceding them, relying on the evidence in the record of the summary judgment motion from both parties—but viewing any dispute of fact in the light most favorable to Drewrey as the non-moving party. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

In August 2016, Drewrey filed a claim against the School Board with the Equal Employment Opportunity Commission ("EEOC"), accusing the Board of violating the Age Discrimination in Employment Act, 29 U.S.C. § 623, by denying him promotions because of his age and by retaliating against him because he asked not to work under a specific school principal. EEOC Charge (ECF No. 51-2). After the EEOC dismissed his charges, Drewrey filed this action against his employer. Compl. (ECF No. 1), Am. Compl. (ECF No. 24). In this litigation, he argues he was passed over for promotion numerous times because of his age. Am.

---

[1] Drewrey submitted a spreadsheet as a response to an interrogatory from the Board. Def.'s Mem. at 2 (ECF No. 51). It purports to describe positions Drewrey claims were denied him as a result of his age. The document is not submitted attached to any sworn statement explaining how it might be admissible at trial. "To be entitled to consideration on summary judgment motions, facts set forth in affidavits must be 'such . . . as would be admissible in evidence.'" Sakaria v. Trans World Airlines, 8 F.3d 164, 171 (4th Cir. 1993) (quoting Fed. R. Civ. P. 53(e)). Nevertheless, it is the only evidence Drewrey has offered identifying possible comparators, and the court considered it as evidence for the purpose of resolving the Motion.

Compl. ¶¶ 21, 23 (ECF No. 24). He also argues he was stripped of a job title—assigned with a temporary appointment—because he asked for more compensation; he urges the court to hold that this was improper retaliation for opposing age discrimination against him. Am. Compl. ¶¶ 15, 29 (ECF No. 24). Discovery is closed, and the Board now moves for summary judgment.

## A.    The Portsmouth City Public Schools Division's Promotional Process.

The Division's promotion process for the administrative positions Drewrey sought is straightforward. When a position becomes available, a notice for the opening is posted on a website. Applicants can then submit an electronic application for the position. The Division's Human Resources Department then reviews the applications received and determines which of the applicants will receive interviews. A screening panel interviews the selected applicants and recommends a candidate to the Division Superintendent, who makes her own recommendation to the School Board. The School Board has final authority for selecting applicants for an open administrative position. Ziegler Aff. ¶ 3 (ECF No. 51-6); accord Drewrey Dep. at 38-41 (ECF No. 51-1).

## B.    Drewrey's Qualifications and Performance.

Drewrey has a bachelor's degree in social studies education and a master's degree in educational leadership. Drewrey Dep. at 6-7 (ECF No. 51-1); Am. Compl. at ¶ 16 (ECF No. 24). He has worked for the Division since 1996, except for a short period when he worked in information technology for another employer. Drewrey Dep. at 7-10 (ECF No. 51-1).

In March 2013, while assigned to I.C. Norcom High School as a social studies teacher, Drewrey's supervisor, Principal Dr. Rosalynn Sanderlin, wrote Drewrey a letter of reprimand. The reprimand described an incident in which Drewrey yelled at, swore at, and threatened a fellow teacher. The reprimand also criticized him for insubordination because he did not comply

with Dr. Sanderlin's directions to report to her office after the incident to explain his behavior. Letter from Rosalynn Sanderlin to Portsmouth City Schools Human Resources Director ("Sanderlin Letter") (Mar. 14, 2013) (ECF No. 51-4). Drewrey concedes that he received the reprimand, that this was unprofessional behavior, that he did curse at his colleague, and that he refused Dr. Sanderlin's direct instruction to report to her after the matter. Drewrey Dep. at 69-76 (ECF No. 51-1). He disagrees that he actually threatened his colleague, though he admits the colleague and another witness both reported to Dr. Sanderlin that he threatened her. Id. at 72. The Sanderlin Letter was entered into Drewrey's personnel file with the Division. See Ziegler Aff. ¶ 4 (ECF No. 51-6).

Soon after this incident, Drewrey was transferred within the Division to William E. Waters Middle School. Drewrey Dep. at 16-17 (ECF No 51-1). At Waters, his supervisor was Dr. Eric Fischer. Between Drewrey's transfer to Waters in March 2013 and the end of the school year in June 2013, Dr. Fischer paid especially close attention Drewrey's performance. Drewrey testified Dr. Fischer observed his performance 19 times during that period. See Drewrey Dep. at 88-91 (ECF No. 51-1). In Drewrey's performance evaluation at the end of the school year, Dr. Fischer strongly criticized Drewrey's performance as a teacher. Out of seven performance competencies, Fischer gave Drewrey the lowest score possible on all but two. Fischer gave Drewrey's overall performance an "Unacceptable" rating. He commented, "All too often, students sleep in class and/or disrupt the learning environment. Improvement is needed in planning instructional delivery, assessment and evaluation, and classroom management." 2013 Evaluation (ECF No. 51-5). Drewrey offered his opinion during his deposition that the evaluation was unfair because he was not scheduled for evaluation and "because Dr. Fischer never officially gave me notice that he was evaluating [him]." Drewrey Dep. at 89 (ECF No. 51-

4

1). He does concede the evaluation made him look like a very poor teacher. Drewrey Dep. at 89 (ECF No. 51-1). Drewrey knew the evaluation would be included in his personnel file but did not remember whether he included a response to the evaluation because he "didn't take this evaluation too seriously anyway." Drewrey Dep. at 95-96 (ECF No. 51-1). Although Drewrey disagrees with Dr. Fischer's opinions, he does not contest that this evaluation was in his personnel file for review by the human resources staff during promotion processes prior to his submitting applications for the positions underlying his claims.

## C.      Drewrey's Failure to Be Selected for Promotion.

Drewrey has identified 18 positions for which he applied prior to initiating litigation. Drewrey Spreadsheet (ECF No. 51-3). The Division's records also reflect Drewrey applied for other positions in addition to those he identified. See Board Spreadsheet (ECF No. 51-7). All of these applications arose after Drewrey's reprimand by Dr. Sanderlin and his poor evaluation at Waters Middle School. See Sanderlin Letter (ECF No. 51-4) (Mar. 4, 2013); 2013 Evaluation (ECF No. 51-5) (June 5, 2013). The Human Resources Department never offered Drewrey an interview for any of the positions. See Drewrey Dep. at 123-24 (ECF No. 51-1); Drewrey Spreadsheet (ECF No. 51-3). According to the parties' "stipulations," Drewrey applied for 16 internal openings, and 14 of them were filled by younger applicants. The stipulations do not identify the age or qualifications of any specific applicant hired for these positions. Stipulations, ¶ 3 (ECF No. 53-1). The Board's evidence, however, establishes the birthdate of younger applicants who were hired for certain positions. Board Spreadsheet (ECF No. 51-7).

Scott Ziegler became the Human Resources Director for the Division in June 2015, a position he continues in to the present. In that position, Ziegler is closely involved in the Division's promotion processes, including the positions for which Drewrey applied. Ziegler

remembers reviewing the first application for promotion Drewrey submitted after Ziegler assumed his position with the Division and also reviewing Drewrey's personnel file in consideration of that application. Because of the reprimand from Dr. Sanderlin in March 2013 alone, Ziegler "did determine [Drewrey] was not qualified for any promotion in the Portsmouth City School system." Ziegler Aff, ¶4 (ECF No. 51-6). Ziegler also concluded from the evaluation from Dr. Fischer that Drewrey was "a very poor teacher." Id. ¶ 6. He also contacted references Drewrey listed on the application and remembered that "some of the references selected by Mr. Drewrey rated him as fair. [Ziegler] saw that as a red flag." Id. ¶ 7. These negative and unenthusiastic comments about Drewrey's abilities as an educator reflected so badly on Drewrey that Ziegler did not and does not "consider him a suitable candidate for promotion to any administrative position for the Portsmouth Public Schools." Id. ¶ 8.

Although Drewrey has identified numerous younger colleagues who have been promoted to positions for which he also applied, Drewrey has offered no evidence of his younger colleagues' record of reprimands or their prior performance evaluations. The summary judgment record does not contain any evaluations of Drewrey after the Fisher evaluation in 2013, but Drewrey testified on deposition that he received an evaluation after the Fisher review which was improved. Drewrey Dep. at 97-98 (ECF No. 51-1). Although other candidates may have been similarly qualified or even less-qualified in terms of their professional credentials,[2] Drewrey identifies no younger peers with similarly negative discipline and performance records who were selected for promotion.

---

[2] In Drewrey's spreadsheet, he identifies several teachers who were selected for assistant principal positions but who only received "certification" after they were hired. Drewrey Spreadsheet (ECF No. 51-3).

**D.    Drewrey's Title Change at New Directions Center.**

Portsmouth Public Schools Assistant Superintendent Dr. Anita Taylor assigned Drewrey to New Directions Center in September 2015. New Directions is an "alternative placement center" for students with discipline problems. Drewrey Dep. at 22 (ECF No. 51-1). The evidence of Drewrey's assignment at New Directions varies, and Drewrey himself has described his transfer inconsistently. But viewing the facts in the light most favorable to him, Drewrey was "introduced" there as the Assistant Principal or Assistant Administrator. He was not given an administrator's salary, but states he was told that would be discussed at the end of the school year. Drewrey Dep. at 22 (ECF No. 51-1). New Directions is a small school with approximately 15 teachers and 50 – 75 students. Drewrey Dep. at 22-23 (ECF No. 51-1). He was also assigned to teach social studies, and he taught as well as performed administrative duties throughout his tenure there. Although he did not apply for the New Directions position, he accepted the reassignment. Drewrey Dep. at 22, 159-61 (ECF No. 51-1). In addition to teaching classes, he was tasked with performing duties primarily related to discipline, which were normally performed by administrators. Shortly after his reassignment, Drewrey's wife passed away, and he took bereavement leave. When he returned in November 2015, the Division's Human Resources Director Ziegler instructed him to stop using the title of Assistant Administrator or Assistant Principal, though he apparently continued exercising administrative duties primarily related to discipline. Drewrey Dep. at 25-26, 159-61 (ECF No. 51-1). During the summer of 2016, Drewrey was instructed by the Division's human resources staff to stop performing administrative duties and limit himself only to teaching. Drewrey Dep. at 28, 160 (ECF No. 51-1). Drewrey remains employed as a teacher at New Directions and had not asserted that any of these title or duty changes resulted in a decrease in his pay or benefits. Drewrey Dep. at 31 (ECF

No. 51-1). He did consider the loss of administrative privileges to be adverse because he lost his master key which allowed him access throughout the building, and he had been performing as an acting principal at New Directions during the principal's absence. Drewrey Dep. at 29-30 (ECF No. 51-1).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322-24. "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not

8

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III.   ANALYSIS

**A.    ADEA Claims of Failure to Promote Due to Age.**

Before bringing an ADEA claim in federal court, a prospective plaintiff must have first filed a charge of discrimination with the EEOC. 29 U.S.C. § 626. The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002)). In a subsequent lawsuit, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained." Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)).

Drewrey alleged in his EEOC Charge that the discriminatory acts against him took place between September 28, 2015, and February 1, 2016. (ECF No. 51-3).[3] Several of the promotions he now claims he was denied due to his age were decided both before and after this time window. However, if he actually was denied promotion on the basis of his age, a "reasonable investigation" of the promotion decisions made during the period described in the charge would also have led to the other promotion decisions. Drewrey's omitting the other promotions from the dates described in his EEOC charge is therefore not the sort of error that deprives a reviewing court of subject matter jurisdiction. Cf., e.g., Jones, 551 F.3d at 300 ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on

---

[3] The date of February 1, 2016 identifies the last act of discrimination Drewrey complained of. (ECF No. 51-3). However, he also checked a box indicating the discrimination was "continuing action." Id.

one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex.").

Drewrey's bigger difficulty is the statute of limitations period applicable to discrimination claims. This court can only consider claims related to discrete instances of discrimination—like being passed over for promotion—if the action complained of took place within 300 days of the day the EEOC charge was submitted. Id. Although Drewrey complains he was denied promotion due to his age on 18 occasions, Drewrey Spreadsheet (ECF No. 51-3), only four of those promotion decisions were made within 300 days of his August 16, 2016, EEOC charge. See EEOC Charge (ECF No. 51-2); Board Spreadsheet (ECF No. 51-7) (elementary school assistant principal, decided on July 1, 2016; middle school assistant principal, decided on July 1, 2016; high school assistant principal, decided on Aug. 1, 2016; high school assistant principal, decided on Aug. 15, 2016). Notably, none of these four decisions occurred during the window of time specified in Drewrey's EEOC charge. However, assuming a reasonable investigation of the promotion decisions during that window would have uncovered the four decisions which were timely exhausted by the charge, the court has jurisdiction over these four promotion decisions and later decisions if they would be uncovered by a reasonable investigation. See Shaw v. Aramark Mgmt. Servs. Ltd. P'ship, 903 F. Supp. 2d 413, 417-18 (E.D. Va. 2012), aff'd, 516 F. App'x 269 (4th Cir. 2013).

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see also Gross v. FBL Fin. Servs., 557 U.S. 167, 170 (2009). The Board's Summary Judgment Motion asserts that Drewrey has not produced any evidence of age discrimination with

respect to these promotion decisions. To proceed to trial on his ADEA claims, Drewrey must produce sufficient evidence from which a reasonable juror could conclude that the Board's actions were due to his age and the but-for cause of his being passed over for promotion on these occasions. See Gross, 557 U.S. at 176; Arthur v. Pet Dairy, 593 F. App'x 211, 217 (4th Cir. 2015). This evidence may be either direct or indirect. Direct evidence includes such things as discriminatory statements made by a relevant decision maker from which a jury could infer a discriminatory motive. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992) (quoting Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988)). Indirect proof requires evidence on all of the elements of Plaintiff's prima facie case of discrimination. To state a prima facie claim for failure to promote due to age discrimination,

> a plaintiff must demonstrate that: (1) he was a member of a protected class, i.e., that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff whether within or outside the class protected by the ADEA.

Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–312, (1996)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (establishing the burden shifting framework in Title VII cases that would later also be applied in ADEA cases) .[4]

If Drewrey succeeds in establishing a prima facie case of discrimination, the burden shifts to the Board to articulate a legitimate nondiscriminatory reason for his firing. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). If the Board meets this burden,

---

[4] The McDonnell Douglas burden-shifting framework applies equally in ADEA cases. Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429–30 (4th Cir. 2000). Because of the similarity between the analytical framework for Title VII and ADEA claims, the court's decision on this ADEA claim is informed by Title VII precedent.

Drewrey must then identify sufficient evidence from which a jury could conclude that the Board's stated reason was merely a pretext for its intentional discrimination. McDonnell Douglas, 411 U.S. at 804. "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148.

Drewrey concedes he has no direct evidence of discrimination against him. See, e.g., Drewrey Dep. at 171 (ECF No. 51-1) (Question from counsel for the Board: "Do you know of any evidence to suggest that [the superintendent] makes decisions on promotions due to age?" Answer from Drewrey: "No, I don't."). Throughout the allegations in both Complaints and his deposition, he has presented no evidence of derogatory statements, writings, or actions by his supervisors or colleagues which were explicitly based on his age. To be sure, Drewrey attributes an age-based motive to the acts underlying his Complaints, but he offers no evidence of discrimination beyond the fact that people selected over him for promotion were usually younger than him. See Drewrey Dep. at 175 (ECF No. 51-1). Because Drewrey has no direct evidence of discrimination, he must rely on the McDonnell Douglas burden-shifting framework to prove a his failure to promote claim by indirect evidence. But his indirect evidence of discrimination is likewise insufficient.

Drewrey is a member of a protected class due to his age. He applied for open management positions in the Division for which he was – at least nominally – qualified. He has identified similarly qualified people who filled the positions for which he applied. With respect to the four challenged decisions occurring within 300 days of his EEOC charge, all four were filled by persons "substantially younger," than Drewrey.[5] For the purpose of defending his claim

---

[5] At the time of hiring, Drewrey was 60, and the positions were filled by candidates aged 49, 47, 34 and 32. There is no "bright line" defining what age qualifies as "substantially younger." Ulrich v. LEXEC, Inc., 233 F. Supp. 3d

against the Motion for Summary Judgment, he therefore has established a prima facie case under the McDonnell Douglas framework. See Laber, 438 F.3d at 430. The Board's Motion therefore turns on whether it had a legitimate, nondiscriminatory reason for not selecting him and whether Drewrey can create a dispute of fact as to whether that reason was pretextual.

The Board has produced extensive adverse material in Drewrey's disciplinary and performance records, all of which predates his applications for promotion. The Board also explicitly states that Drewrey's prior performance and disciplinary record led to his not being selected for promotion. Def.'s Mem. at 10-11 (ECF No. 51) (citing Ziegler Aff. (ECF No. 51-6) (affidavit of human resources official explaining he did not offer Drewrey a job interview because of his bad discipline and performance records)). This was a reasonable, legitimate, nondiscriminatory reason for not promoting Drewrey. See, e.g., Tavernier v. Health Mgmt. Assocs., Inc., 498 F. App'x 349, 351 (4th Cir. 2012) (holding that even an erroneously-formed belief in an employee's poor performance is a legally sufficient to rebut a prima facie case of discrimination—so long as it is the actual reason). Drewrey has not produced any evidence responding to, much less rebutting, the Board's evidence of its legitimate, non-discriminatory promotion decisions. He has not disputed much of the conduct which led to his discipline by Sanderlin, and though he disagrees with the severity of his poor evaluation by Fisher, he has not offered evidence to suggest it did not accurately reflect the opinions of his supervisor. See Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011) (citing Tinsley v. First Union Nat. Bank, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant.")). Although he apparently received an improved review after his transfer, it is not part of the record on summary judgment, and appears to have occurred after many of the promotion decisions

---

515, 526 (E.D. Va. 2017). But District Courts within the Fourth Circuit have generally held that age differences of less than 10 years are not substantial. Id. at 527.

underling his claim. In order to rebut the Board's non-discriminatory reason Drewrey must produce evidence from which the jury could conclude that its explanation is "unworthy of credence, or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004). He has admitted that he has no such evidence. Drewrey Dep. at 172-75 (ECF No. 51-1). For example, if Drewrey had offered evidence of a younger employee with similarly-poor disciplinary and performance records who was selected for promotion, this may have been evidence that the Board's proffered reason for not promoting him was pretextual. However, he can identify no employees in the Division selected for promotions for which he applied who also had similar adverse material in their records. See Drewrey Dep. at 175 (ECF No 51-1) (Counsel for the Board: "Do you know if any of [the applicants promoted over you] have written reprimands in their files similar to yours?" Drewrey: "I don't know. I have no idea." Counsel: "Do you know if any of them have ["Unacceptable"] ratings from 2013?" Drewrey: "I have no idea."). Because Drewrey has not created a dispute of material fact rebutting the Board's legitimate, nondiscriminatory reason for not promoting him, the Board's Motion for Summary Judgment on his claims of age discrimination will be GRANTED.

## B.    Retaliation[6]

Although Drewrey's failure to promote claim was exhausted in his EEOC Charge of Discrimination, the court lacks subject matter jurisdiction over the retaliation claim asserted in his Complaint. In his EEOC Charge, he stated that he was being denied promotion as retaliation for having asked not to work under his supervisor at I.C. Norcom High School, Dr. Sanderlin.

---

[6] Drewrey's brief in opposition to the Board's Motion for Summary Judgment does not address the retaliation claim at all. The failure to respond to the Board's statement of undisputed facts alone provides a basis to grant summary judgment if warranted by the Board's assertions. E.D. Va. Local Civ. R. 56. The court still considers the claim raised by the Complaint rather than treating it as waived in its entirety.

(ECF No. 51-3).  In his Amended Complaint, however, he claims that the retaliatory act against him was his being stripped of the Assistant Principal or Assistant Administrator title at New Directions Center in October 2016, and that this was done in retaliation for his asking to be paid as an administrator rather than as a teacher.  Am. Compl. ¶¶ 15, 29 (ECF No. 24) (alleging the Defendant striped Drewrey of the title of Assistant Administrator in October 2016, after he asked to be compensated for the administrative duties).    The title change Drewrey is referring to actually happened in November of 2015, and appears from the evidence presented in the summary judgment record to have been totally unrelated to his 2013 discipline by Dr. Sanderlin. Drewrey Dep. at 26-27 (ECF No. 51-1).  In deposition testimony taken for this litigation, Drewrey admitted under oath that, contrary to his sworn statement in the EEOC Charge, he never asked not to work with Dr. Sanderlin and that he therefore could not have been retaliated against for this action which he never took.  Drewrey Dep. at 59-60 (ECF No. 51-1).  Because a "reasonable investigation" of the retaliation claim in the August 2016 EEOC charge would not have developed any facts about Drewrey being kept from using the title of Assistant Administrator at New Directions, whether it happened in November 2015, as Drewrey testified, or in October 2016, as he alleged in the Amended Complaint, the EEOC Charge cannot be said to have administratively exhausted the retaliation claim contained in the Amended Complaint. See Jones, 551 F.3d at 300 ("[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained [in a subsequent lawsuit].").  The court therefore lacks subject matter jurisdiction over the claim.

Even if the court did have subject matter jurisdiction over this claim, the claim would likely fail on its merits.  Drewrey appears to claim he was retaliated against because he asked to

be paid as an administrator while performing administrative duties at New Directions. He has not presented sufficient evidence to survive summary judgment on this retaliation claim.

To survive summary judgment on his retaliation claim, Drewrey must offer evidence demonstrating a material issue of fact as to three elements: (1) that he engaged in protected activity; (2) that his employer took materially adverse action against him; and (3) that there was a causal link between these two events. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (interpreting the Title VII anti-retaliation provision);[7] Adler v. Va. Commonwealth Univ., 259 F. Supp. 3d 395, 405 (E.D. Va. 2017). Protected activity includes activity which opposes any practice made unlawful under the ADEA. DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015).

It is not clear that Drewrey engaged in protected activity by asking for additional compensation for administrative duties he was performing, because it does not appear that his request had anything to do with his age. See Drewrey Dep. at 58 ("Nothing was mentioned about my age at that time"). Even assuming for the purposes of this motion Drewrey had engaged in protected activity, he has not established that being asked to stop using the title of Assistant Administrator was a "materially adverse action." A materially adverse action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see also Emami v. Bolden, 241 F. Supp. 3d 673, 684-85 (E.D. Va. 2017). Materially adverse actions in the retaliation context do not have to affect the terms and conditions of employment, but there

---

[7] Because of the similarity between the ADEA's anti-retaliation provision and that contained in Title VII, the court relies in part on the more-abundant interpretations of the Title VII provision to guide its decision here. See, e.g., Gordon v. Napolitano, 863 F. Supp. 2d 541, 551 (E.D. Va. 2012).

still must be a suggestion of harm flowing from the challenged decision.  Jenson-Graf v. Chesapeake Employers' Ins. Co., 616 F. App'x 596, 598 (4th Cir. 2015).

In this case, Drewrey was always employed as a teacher, though he also performed administrative duties in addition to his teaching at New Directions.  See Drewrey Dep. ¶¶ 62-63. ("I never said I was demoted to teacher, no, because that never happened.").  Horace Lambert, the New Directions principal, testified that Drewrey was a teacher with administrative responsibilities, a position he described as "administrator designee."  Stipulations, ¶ 9 (ECF No. 53-1).  Lambert never considered Drewrey an Assistant Principal and Drewrey knew that.  Id.

Under these circumstances Drewrey has failed to offer evidence suggesting he suffered some tangible loss because he was directed to stop using the Assistant Administrator title. Indeed, the uncontradicted evidence indicates his pay was unchanged after the Human Resources Department instructed him to cease using the title.  The direction he received from Zeigler to stop calling himself Assistant Administrator is more akin to the annoyances "all employees experience" than to an act which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  See White, 548 U.S. at 68.  Because Drewrey has not offered any evidence from which a reasonable juror could conclude he was subject to actions by the Division that would have dissuaded a reasonable employee from engaging in protected activity, his retaliation claim also fails to meet the second element.  Finally, the summary judgment record contains no evidence establishing that Ziegler knew of Drewrey's claim of protected activity.  As a result, his request that Drewrey stop calling himself an administrator could not have been retaliatory.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element the employer must have taken the adverse action because the plaintiff engaged in protected activity.").

Notwithstanding these substantive defects, because Drewrey did not exhaust this claim for retaliation with his Charge to the EEOC, the court lacks subject matter jurisdiction over it. The court must therefore DISMISS the claim for want of jurisdiction. Jones, 551 F.3d at 301 (holding that, when jurisdiction is lacking, dismissal – not summary judgment – is the correct course of action.).

## IV.   CONCLUSION

For the foregoing reasons, the Board's Motion for Summary Judgment (ECF NO. 50) is GRANTED, and the Clerk shall enter judgment in favor of the Defendant Portsmouth School Board on the failure to promote claim and DISMISS the retaliation claim for lack of subject matter jurisdiction.

                                        /s/
                                  Douglas E. Miller
                                  United States Magistrate Judge
                    _____
                    DOUGLAS E. MILLER
                    UNITED STATES MAGISTRATE JUDGE

March 21, 2018

Norfolk, Virginia